**Warman Broadcasting, Inc. v. NAACP Special Contribution Fund**

*Frederick A. Polner,* for plaintiff.
*Wendell G. Freeland,* for defendant NAACP Special Contribution Fund.
*Murray I. Horewitz,* for defendant Kenneth R. Strawberry.

FRANKS, *J.,* August 8, 1983—This matter is before the court on plaintiff's petition for a declaratory judgment seeking clarification and interpretation of a stock ownership agreement. Underlying this ac-

tion is defendant Strawberry's (hereinafter "Strawberry") purported donation to defendant NAACP Special Contribution Fund, (hereinafter "NAACP.") of 125 shares of stock in plaintiff on or about December 20, 1973.

Following hearings held on this matter, and consideration of briefs and memoranda submitted by the parties, we find that the purported transfer of stock of Warman Broadcasting, Incorporated, owned by Strawberry to NAACP is void ab initio.

It is well settled that a discussion contract provision which requires an offer of stock first to other stockholders (or to the corporation) before sale to outsiders is valid and enforceable. Beggy v. Deike, 413 Pa. 74,196 A.2d 179 (1963); Mather Estate, 410 Pa. 361, 189 A.2d 586 (1963). Defendants herein are not disputing the validity of the agreement as executed, but are contending, inter alia, that Strawberry did, in fact, offer his stock to plaintiff before donating it to NAACP. We find that Strawberry did not offer his shares to plaintiff in the manner specified under the terms of the stock agreement.

In pertinent part, the stock agreement reads:

3. It is further understood and agreed that no share of stock of the corporation now or hereinafter owned by parties hereto shall be encumbered or disposed of except upon the following conditions:

4. Restriction During Life. No stockholder shall transfer or encumber his shares of stock of the corporation to any person, firm or corporation without the consent of the other stockholders unless the stockholder desiring to make the transfer or encumbrance . . . shall have first made the offer to sell hereinafter described and such offer shall not have been accepted.

(a) Offer By Transferor. The offer shall be given to the corporation and to the other stockholders and

shall consist of an offer to sell all of the shares of the stock of the corporation owned by the transferor, to which shall be attached a statement of intention to transfer or encumber, as the case may be, the name and address of such prospective purchaser or lienor, the number of shares of stock involved in the proposed transfer or encumbrance, and the terms of such transfer or encumbrance.

(b) Acceptance of Offer. Within thirty days after the receipt of such offer, the corporation may, at its option, elect to purchase all, but not less than all, of the shares of the stock of the corporation owned by transferor, under the same terms and conditions applicable to the corporation. The corporation shall exercise its election to purchase by giving notice thereof to the transferor and to other stockholders. The other stockholders shall exercise their election to purchase by giving notice thereof to the transferor and to the corporation. . . .

Certain other provisions of the stock agreement refer to notice to be given by the transferor and purchasers, and certain details as to price and the closing of any sale.

During the hearings, testimony presented by defendants established that there were discussions between Strawberry and Edwin Warman (now deceased), who was the chief corporate officer, concerning a possible purchase of Strawberry's share of stock. Exhibits such as letters between Strawberry (or his representatives) and Mr. Warman (or his representatives) corroborate this. However, we find that these letters and discussions were in the nature of negotiations preliminary to any purchase of Strawberry's shares and were not actual offers of the shares to the corporation as defendants' claim.

In the Beggy case, supra, the Supreme Court pointed out that a prior holding, (Mather Estate,

supra) requires "strict adherence" to the terms of the stock agreement entered into by the parties. Such strict adherence is absent here. As is apparent from a reading of the agreement herein, there are various formal steps that the parties are to go through when selling or purchasing stock under the agreement. There has been no evidence of any "statement of intention to transfer or encumber" as required by the agreement. (See paragraph 3(a).) And there has been no evidence at all that the other shareholders were notified of Strawberry's intention to transfer his stock. Whatever Strawberry assumed because of his discussions with Mr. Warman, there were still provisions of the agreement to be followed in a transfer of his stock.

For these reasons we find that Strawberry did not comply with the terms of the stock agreement which he signed in 1968 and which stock agreement was in effect at all relevant times herein.

Defendants also argue that even if the court should find that Strawberry had violated the stock agreement, his transfer of shares to NAACP should be found valid for other reasons. The first of these reasons is an allegation that plaintiff is guilty of laches in failing to file suit for nearly eight years.

This court previously addressed this claim pre-trial in an opinion and order dated January 24, 1983, wherein we denied defendant's preliminary objection based on laches since defendants failed to plead any prejudice Strawberry now claims prejudice by arguing that if the court finds invalid the stock donation to NAACP, he could possibly suffer harmful tax consequences. Strawberry claims that he would lose a deduction taken for said donation, and that he would possibly be subjected to penalties and interest due on an invalid deduction.

We find that Strawberry's claim of prejudice is too speculative at this point to be relied upon. Strawberry is only claiming that prejudice could occur. There has also been nothing cited to the court by Strawberry that is authority for his position that possible harmful tax consequences to a defendant is grounds for a claim of laches.

NAACP likewise claims that the alleged delay prejudiced it because the death of Mr. Warman occurred during that period. We disagree with this claim. In our above discussion we noted that no evidence was presented which would establish that the formal requisites of the stock agreement were complied with. Thus testimony by Mr. Warman, which NAACP is only speculating upon, is not seen to be any benefit to NAACP in this regard. Thus we find that neither defendant has shown any prejudice because of alleged laches.

Strawberry also claims that the stock agreement is not valid and binding on himself because of the failure of plaintiff to revalue the stock annually since March 31, 1972. Strawberry argues that this failure acts as a waiver of the stock agreement provisions.

We do not find that this alleged failure operates as a corporate waiver of the entire stock agreement. The issue as to the stock share value, and whether it has or has not been revalued, is tangential to the instant case. There has been no evidence presented that plaintiff has a history of ignoring the stock agreement provisions on transfers or sales.

We also note that in Mather Estate, supra, the Supreme Court found a stock agreement that restricted transfers much as in the instant case valid between the parties even where the purchase price would be at least $1,000 per share less than the true market value. The rationale therein expressed is

still valid. The duty of the court is to seek the intentions of the parties in the agreement and to determine whether the agreement has been complied with. Strawberry's claims as to waiver of the stock agreement and as to the so-called failure to revalue the stock are without merit here.

In summary, we find that the stock agreement was valid and that Strawberry failed to comply with the agreement. Strawberry is not entitled to have the transfer of stock to NAACP entered on the corporate books.